EYEWEAR MARCHON EYEWEAR When you're ready Mr. Nicodema. I am, your Honor. Thank you. Good morning. Please the Court. The District Court in this case committed two fundamental errors in granting the defendant's motion for assembly judgment of rest judicata. The first one was the failure to recognize that amended Claim 23 and new Claim 35 in the reexamined 545 patent created new causes of action that did not exist in either the Revolution I or the March on I litigations. Compounding that error, the District Court failed to give any weight to Paragraph 6 of the settlement agreement in the March on case which limited the scope of the releases to causes of action existing or that could have been brought before the effective date of the agreement and concerning the old designed March on primary frames. Why couldn't it have been brought before? Because amended Claim 23 and new Claim 35 did not exist in the patent, in the 545 patent during the March on I and Revolution I litigations. It existed for the first time over a year after those cases were decided after the reexamination certificate adding those claims was issued in 2009. Now what this court looks at under rest judicata in determining whether the same claim is being raised in both actions is the transactional facts, the time, place, and manner which led to the first action and the time, place, and manner. Are you suggesting that the new claims which only added this horizontal surface, they added a second element to you? Okay. Did those change things? Did they change the substance of the claims drastically? I believe they changed the substance of the claims. If they changed the substance of the claim drastically, we'd have intervening rights, wouldn't we? You may have intervening rights up until the time of the reexamination certificate. But my point being the way that you would circumvent the intervening rights problem is by saying, oh, we didn't make any change or any significant change. And if you didn't make any significant change, then why aren't you stuck with the proposition that you should have just amended your complaint to cover the new products? Because in the first instance, you had every opportunity to bring that. Well, we believe, Your Honor, they are significant changes. Then intervening rights is your problem. Am I right? You've got to choose the devil or the deep blue sea. Well, our position, Your Honor, is these are just like the reissue cases that we cited in our briefs where a party sued on a broad original patent in one case, and then in the second case, they sued on a narrower reissue patent. And the court said, well, res judicata does not apply there because those new claims, those narrower claims did not exist in the original patent if there were intervening rights. Okay. Tell me again how these claims change. Sure. The horizontal surface is two ways. One could characterize that as not much of a change since it was there before. Two ways. The words horizontal surface was not in original. They weren't there, but the feature was there, right? No. See, now when you look at the reexamination prosecution, original claim 23 was rejected over two references, Sadler and Nishioka. These magnet pads were not horizontal, you say? No. Sadler and Nishioka were front-mounted designs where the clip clipped on from the front, so the magnets or magnetic members were vertically oriented. And claim 23, which was generic as to the spatial orientation of the magnetic members, was rejected over those references. And during prosecution, the patentee specifically said that, look, look at these references. The magnets are located in the plane of the lenses, meaning vertical. They put in the horizontal limitation. That was the only substantive change to claim 23 that was made, the horizontal engaging surfaces. Claim 35 added the requirement that the magnetic members must be magnets. That's another change. Now, doesn't the top-mounting configuration necessarily imply a horizontal surface limitation? See, once again, this is all flying in the face of sound patent law. If you were really doing something you didn't have support for earlier, then you'd have a written description problem. You would be adding new matter. So you couldn't have been adding new matter. So the top-mounting figure showed that you had horizontal limitations in your original inventive scheme. And you didn't add anything except specificity. And if you did add something, intervening rights. Well, top-mounting means mounting in an up-and-down direction from the top. There's a top-mounting configuration, right? There's the little horizontal surface on each side of the lenses where you click the magnet on. Mounting from the top, meaning in the up-and-down direction, doesn't necessarily mean that the engaging surfaces have to be horizontal. If it did, the patent office would not have rejected original Claim 23 over Stadner and Nishioka, which were front-mounted. And in the reasons for allowance, the examiner paraphrased the language of Claim 23, saying, this is allowable, the new Claim 23, this is allowable, and cited the horizontal surfaces. So that was the only substantive change, and that was the reason why it was allowed. At minimum, there's an issue of fact on that. Let me ask you a question, moving away from this question of the effect of the re-exam. Yes, sir. Well, you tell me, I won't assume it. Is the present action charging infringement of products that were not on an individual process, individual pairs of eyeglasses and frames, that were not in existence at the time of the first action? Or are you suing on a new theory with respect to products, individual products that were in existence? When I say individual products, I don't mean the models. I mean the actual individual eyeglasses. The actual individual eyeglasses. Let me tell you where I'm going with this. Normally, if I commit a tort, and you sue me, you win or lose, either way. And then the case comes to an end, and five years later, I commit the same tort. You can sue me again, right? Yes. Res judicata doesn't prevent you from suing me again. What I'm trying to get at is that case. Do you have a subsequent tortious action, subsequent to the termination of the first proceeding in this case, as to which res judicata is being asserted against you? There is a subsequent tortious act. Well, it's sort of curious, because you don't really make much of that in your brief. It would have seemed to me that you would, that's the sort of basic principle. Do you agree that as a matter of res judicata, that this is… Yes. And actually, the court is… Why are you emphasizing so much this question of whether the re-exam creates a new claim? The reason why I'm emphasizing that, Your Honor, is because that's in the sparse opinion the district court gave us. That's what she emphasized. Presumably, because that's what you raised. We did also say in our briefs that… Now, we're dealing with the auxiliary spectacle frame here. At issue in the first cases, in March on 1 and Revolution 1, was the primary spectacle frame. The auxiliary spectacle frame, there's a continuing tort, yes, because they're still selling it. They continue to sell it after March on 1 and Revolution 1 were over. And I think what Your Honor may be referring to is something like the Cordes case out of Delaware, which we cited. And in that case, the patents were the same, which is not, as we contend, true here. The products were only colorably different. They were 99 percent the same. And the district court said, well, there's a new damages period. It's a continuing tort. That new damages period did not exist in the first action, so the doctrine of res judicata does not apply. That's the Cordes case. That's also the technology leasing case out of the Eastern District of California in 2010 that we quote extensively from. There were two things that happened there. There were narrowing reissue claims in the reissue patents, and some of the claims were the same. So, the district court said two things. As to the narrow claims, res judicata doesn't apply. They did not exist. And the defendant came forward with no evidence to show that they were substantively the same. Now, here, March on has conceded in the district court that the new claims in this action are narrow, narrower than what was at issue in the first cases. And to finish the line on technology leasing, there were claims that were also the same in the reissue patents. And the court said, res judicata doesn't apply there either because it's a new damages period. It's a continuing infringement and a continuing tort. So, those two cases address that issue, Your Honor. Now, if I may, I'd like to turn to the March on settlement agreement. Sure. Okay. You're into your rebuttal time. Oh, I am? All right, then I'll save that. Okay. That'll be fine, Mr. Nicodima. To please the court, good morning, Your Honors. I'm representing the March on and Nike defendants. This is the third time that this court is dealing with the basic specification in these inventions, right? The first time was the original patent. That was the 207 patent. That litigation started about 13 years ago, went all the way up on appeal. Then Aspect got a reissue of that 207 patent. We had more litigation against March on this time for the first time, second time against Revolution. And that went up on appeal and this court dealt with it at that level. What we have now is a reexamined claim with a reexamination certificate that amended an original existing claim 23 in the reissued patent. And so, the question here is, and in fact, the first line in Aspect's reply brief is, every patent is a new and independent cause of action. Setting that aside, could you go directly to the consequences of the settlement and the release? Yes, that's correct. By the way, in your brief, you have that marked as confidential. I assume that it is not confidential and that we cannot refer to it. That's correct. Okay, so we can disregard the confidentiality? Yes, you can. It's been marked confidential in the case pursuant to protection.  Okay, to answer your question, is Aspect asserting infringement against claims that were in existence in the first action? The answer is yes. Okay, but are they also asserting claims as to products, individual products of one pair of glasses or another that were not in existence in the first case? Only to the extent that some of the auxiliary frames are a little different in size or shape. I'm not going to different models here. What I want to say is, if I went down to CVS and I plucked one of these products off the shelf, would that particular pair of glasses have been in existence at the time of the first action? Or put another way, if it wasn't in existence, is it within the scope of the new action?  And therefore, why are they barred by res judicata from suing you for a second tort for producing a good that didn't exist at the time of the first resolution? Firstly, there is a settlement agreement whereby they entered into a release, including a stipulation of dismissal of all claims. They had a Claim 23 that would cover any of these frames you're now talking about, Your Honor, because the original Claim 23 is clearly broader than the re-examined one. Except that you have the language, with any Marchand old design magnetic eyewear made, sold, which seems to limit the release to the old design. Correct. Now they're using the new design. Correct. Paragraph 6 is limited to the old design. It actually goes beyond the patent in suit there. It's any claim which could have been brought. Paragraph 4 is the operative paragraph that is a stipulation of dismissal of all claims in the action. Your Honor, it's a claim splitting argument also. It's very, very important in this case. They had Claim 23 that would arguably cover every claim, every device at that time or anything that was a colorable imitation within the confines of the law. In other words, insubstantial differences that do not relate to any of the limitations in the claim. But that's what we have here. They gave that up and they did not sue on Claim 23 the first time around. What they are doing now is suing on an amended Claim 23 that came out of re-examination. And that's claim splitting. They could have sued on all those frames. They chose not to. They entered into a stipulation of dismissal of all claims that were brought and could have been brought. But if they're new products, there's a new tort. Back to Judge Bryson's point. I don't think they're new products within the law because they are, as a court, as Judge Cook found down below, they are essentially the same. As she cited to the law, the Akimai case, I think it is, and the Foster case. She did the analysis that they're essentially the same. The only difference in the auxiliary frame, arguably on some of the frames, not all of them. Some of the accused devices are exactly the ones they had in the first act. But where this is going, it seems to me, is if you produce, let's say, widgets in 1995, you produce 100 widgets. I sue you on my patent and I win. And I get $200,000 worth of damages. And then you have exactly the same widgets. You produce exactly the same widgets in 2000. You produce 10,000 of them. And you say, rest are to come. It's the same widget. That doesn't work, right? It could work. You can't cut off my right to damages for your additional tort, right? It's not an additional tort. Because there's a stipulation of dismissal of the claim when you enter into that claim. I understand your argument about the stipulation. If the stipulation is read to mean no matter how often in the future we should commit any infringement of this patent, we're done. Old, new, whatever. Then sure, you're right. And that's exactly what happened. It was a matter of res judicata law. You would agree with me that in my example, you cannot assert res judicata against my second action, right? If the first cause of action was decided on the merits, which it was here, then I think you would. There was an adjudication by virtue of the stipulation of dismissal with prejudice. And there's claim splitting. They had a claim they could have sued. They gave it up when they said we are entering into a stipulation. And then you committed another tort. If you've committed another tort, they can come right back at you with that claim or any subsequently issued claim. How do you interpret this language of either dismissal or release to cut off their ability to sue when you infringe again? In March on 1, they had a frame that they say infringes. And the stipulation of dismissal says our claim of infringement of this frame is dismissed with prejudice. That's it. So I think the question later on with whether or not it is a tort later on is whether or not the frame you're now looking on at is identical to that frame or not legally different. In other words, it's a colorable, it's the same thing. Essentially the same as the law requires. And that's what we have here. If we change the frame so that there's a material difference or a difference that's not legally the same, then I would say they do have a cause of action for that. But that's not what happened here at all. And they gave up when they entered into the stipulation of dismissal and the settlement agreement is one of the grounds that shows res judicata. The other is claim splitting. And I think this issue about re-examined claims is very important because if they're allowed to do what they're trying to do here, there's nothing to prevent aspects from coming back a fourth time by going back for re-exam, getting another narrower claim. By the way, by the statute, the re-examined claims have to be narrower. They cannot be broader. And so there is no claim we can come – they can't come up with a claim in the future that would be broader than what they had in the first action. And that's really the basis of our argument. Well, and usually we have an injunction that stops you from infringing in the future. Well, but here we have a stipulation of dismissal with prejudice. In other words, they're giving up their claim and there was consideration – Wouldn't that just cover the products that are in existence at that time? I mean – Well, it covered the products in existence at that time and also any other product that is the same. Sure. I think if you sue someone and the case is dismissed with prejudice, the accused device is effectively released. I mean, you can't sue them again for the same device later on. Unless that's explicitly in your settlement agreement or in your stipulation of dismissal or it is a dismissal without prejudice, which is not the case. And that's where we – that's what brings us to the language of the release. Yes. Which is limited to old. Limited to old precisely because those were actually on the market and asserted to be infringed in March 1. Correct. So that goes back to the question that Judge Rader brought up. Should an aspect have sought injunctive relief at that time if these glasses were on the market? They should have. Well, they were asserting infringement and the claim – and the case was settled. And in fact, it was adjudicated with revolution. They didn't even settle it. It went all the way up. All right. Now you see why we don't like to divide these arguments. You guys have to figure out which one of you argues. Mr. Hanley? Yes, Your Honor. Unfortunately, the revolution is differently situated because there's a settlement agreement in the case of March 1. In the case of revolution, there's a final judgment. So it really was necessary to split the argument for that reason. No. You can have one person who can argue both. But go ahead. Going right to the point, it's not whether the specific product was in existence at the time that matters for purposes of ratiocata. It's whether the cause of action was in existence. Well, the cause of action depends on whether the product exists. Take my case. Are you telling me that I sell – I think it was you that was selling. But you sell 100 widgets in 1995. I sue you. I win. And I win $2,000 damages. And then in 2005, you sell 10 times as many widgets, the exact same type of widget, but of course new products. And you can bar me from suing you for under-ratiocata? No. You don't have a new cause of action. You have a new remedy. You can recover on the original determination if that was the correct determination. You do not, under this court's jurisprudence, have a new cause of action. What case of this court says that? All of the cases, the Nystrom case, that say that the test is whether the products are essentially the same. And so if the products are essentially the same, this court has stated very clearly that you do not have a new cause of action. Again, you may have a remedy for those sales that occur after the first adjudication, but you don't have a new cause of action. But if there's no injunction, for example, how do I get my remedy other than by suing you again for those additional sales and getting my remedy? You can go back to the court that issued the final judgment in the first case. The final judgment was just damages. No, there was also an injunction in this case. So there was an injunction in the case of Revolution. So this is going to be very applicable post eBay where the court may not enter an injunction. Typically the courts would enter in those cases post ongoing royalties. And the market will change and the value of the product will double and the only way I can recover is to bring a new cause of action. This is precisely on point. It's a bit of a red herring, though, in this case, Your Honor, because the determination in the California case was that the auxiliary frames do not infringe. That was on the 207 patent, right? No, no. On the 545 patent. You lost the 545, right? No, no, no. There was a summary judgment on claims 6 and 34, which included the auxiliary frame. The court construed the auxiliary frame limitations of horizontal surface to mean a downwardly facing surface and construed the extending across limitation to mean extending across the top up. On that basis, the court granted summary judgment that claims 6 and 34 were not infringed. You may have, in that case, you may have a collateral estoppel argument. Well, we have argued collateral estoppel, and that certainly applies. But the trial judge did not rule on the basis of collateral estoppel. She ruled on the basis of res judicata. And this court can affirm on any legal grounds. And we've cited the case law. We wouldn't have anything to affirm. There's no decision to review. We'd have to do a lot of digging and poking around in order to get at the collateral estoppel issue. Well, we certainly, I mean, it was presented on summary judgment to the trial court, and there's a full record of that there. She made no findings. I mean, collateral estoppel is a pretty fact-based determination. You have to determine what was raised the first time, what was adjudicated, whether it was adjudicated finally, and so forth. This court absolutely has enough in the record to make that determination. But I would submit that for the reasons we've stated, that res judicata also applies, including the fact that there was no evidence submitted in this case that there was a difference between the products, the auxiliary frames that were at issue in the first case and the auxiliary frames that were at issue in the second case. There's been no evidence. We submitted evidence in summary judgment that for purposes of the limitations of the claim, the accused auxiliary frames in the first case were precisely the same as the accused auxiliary frames in this case. So under this court's jurisprudence regarding whether then claim preclusion attaches when the products are essentially the same, it does. And again, the important distinction is that there was a determination in that first case. We have an instance here where it isn't a question of claim preclusion. It's issue preclusion. Yeah, we're not going to go back and relitigate claim construction and several issues, but new products, new tort, new claim. Is that really what's going on here? You're arguing issue preclusion to us under the guise of claim preclusion? No, I agree. I believe that both apply. I'm not mixing and matching the two. We believe that claim preclusion absolutely applies because the products are essentially the same. And you don't get a new cause of action by virtue of the fact that you sell a product on day two, the day after the judgment. You don't get a new cause of action. You may get a new remedy. It's not a new cause of action for claim preclusion. I'm having a really hard time. Set aside injunctions for a moment. Let's assume that, as Judge Reiter said, that this district court has taken eBay and run with it and says, you're not getting an injunction even though you're absolutely right, Mr. Patentee, that your patent was infringed. And I'm giving you damages, and here are your damages to everything up until the day of the judgment. All right. And three weeks after the judgment, you say, well, there's no injunction. I'm going to continue to sell this. And you go out and you make some more stuff, and you sell it. It's exactly the same. You're going to come in and make a res judicata argument? I would. Frankly, I've never, ever seen a case where someone sues on products that were issued in the first case for a subsequent damages period. They're products that were issued in the first case. Let's draw a distinction here between products, the actual… I'm talking about models. … in existence or models, because I think it's pretty basic, res judicata law, unless I'm really hopelessly confused on this, that if you commit new torts after the judgment, that creates a new cause of action. In this case, there was no original tort as being asserted here because of the determination I mentioned. But having said that, I do disagree with you. I do respectfully disagree that there is a… Can you cite any – give me any authority for the proposition that when there is tort number one, adjudication of that tort, and then tort number two, which is identical in form, the exact selling the same good or whatever, but it's a tort which is post-judgment in the first case, that that tort is barred from assertion by res judicata? In the 11th Circuit, it's the Manning case, which says – and there are federal circuit cases that say it as well – that it's cases that have a common nucleus of operative fact. It's the same determinations of fact that would have had to have been made in the first case that are made in the second case. And that's where this course jurisprudence of essentially the same came up. Okay, if res judicata, sort of the fundamental framework of determining whether claims are the same, is not whether they're precisely the same legal theory, but whether there's a common nucleus of operative fact. The nucleus of operative fact as to whether products sold on day two after the judgment infringe is precisely the same as the nucleus of operative fact as to whether they infringe on day two. But significantly – When you said products and then said they, of course, when you articulate it that way, you're right. But if we're talking about different products, that is to say, products that individuals didn't exist on day one and were created and then sold on day two, I'm not sure the common nucleus of operative fact analysis encompasses that kind of case. I'll take a look at your Manning case, but I frankly would be surprised if you're right about that. Well, and we would also submit that it would be bad policy to allow serial lawsuits on products that were identical in terms of the design that were just sold on day two or day three. But it would be good policy to allow an infringer, once there's been an adjudication of infringement in case one, to have a free pass to infringe, assuming there's not an injunction. Well, why would we assume that? That's the norm. I am assuming it because there are many instances in which you won't get an injunction for a variety of reasons. If you absolutely have to have an injunction in order to enforce your first judgment against subsequent torts, that's a pretty good reason for the Supreme Court to reconsider or even, it seems to me. Well, I think that, as I say, the norm in patent cases is to seek an injunction or any alternative in ongoing royalty, and that should be the expectation rather than creating a new cause of action and undoing race judicata law that's already been settled by the court to say that you have a new cause of action. You have to sue all over again to get damages on products, the infringement of which has already been adjudicated or not. And in this case, again, it's very important that the auxiliary frames were determined not to have infringed the 545 patent. So I think both on the grounds of race judicata for the reasons we've discussed at length, but also collateral estoppel, I would encourage the court to look. We've made a very full record that collateral estoppel bars this case as well. Thank you, Mr. Henley. Your Honor, I only have a few minutes. I'll submit my… Nope. Come on up here. You've got some questions to answer. I will answer them all. Okay, so in your situation, the patentee loses on infringement. You just get to keep bringing the claim over and over and over again, one case after another, because it's a new tort. Is that right? Not necessarily. This brings… But, hold on a second. That seems to be where this could take us, right? You'd get a chance to… You lose on infringement, and you're saying, yeah, but they're infringing again. I'm going to bring a new claim. Yes or no? You have to look at the claims that you're going to bring, and you have to look at the reasons why you lost on infringement. Well, if it's the same claim and the same product, you lose, right? You've lost once. That case is over. We're not going to relitigate it again, right? Yes, and here it's not the same claim, and it's not the same product. But if it were the same claim, and you lost the first time, you'd be cooked under collateral estoppel, right? Almost certainly. If it's the same claim and the identical issue, that's what collateral estoppel is. The identical issue was litigated and lost in the first place, then there would be collateral estoppel. The district court, in this case, did not rule on collateral estoppel, and we submit it's not the identical issue. They're not the same claims. Both counsel went into some detail about… The products are the same. There's no differences. We think this is just like the Acumed case, which we cite in our briefs. There was a surgical… If we determine it's the same claim, oh yeah, you've thrown in a horizontal limitation, but it was there in the figures before. Well, it was there in the figures before, and if it wasn't, it'd be new matter, and you'd have trouble that way anyway. So it's essentially the same claim or essentially the same case. Then what do we do with this? And essentially the same products, too. What do we do with this? Okay, you still have the technology leasing and court esplanade cases, which Judge Bryson didn't mention by name, but mentioned in theory and concept, where it's a continuing… You've lost on that already. Why are we coming back and relitigating it is the question. Oh, if we lost… At least a portion of these you lost on. What about those? If the claim was absolutely identical, which it's not, and if the claims and everything else were absolutely the same, which they're not, then maybe arrest judicata, maybe, possibly, as Judge Bryson… Well, it's really collateral estoppel, right, or issue preclusion. It could be, but as you pointed out, it's very fact-intensive. I mean, to take the hypothetical of all hypothetical worlds and all the stars aligned, so it is collateral estoppel, then it is collateral estoppel, but that's not the case here. One point I wanted to raise on both counsel, since you have me up here again, both counsel were talking about the auxiliary frames being the same, or essentially the same. Now, we did submit evidence in the district court showing that there are dimensional and angular differences in the new auxiliary frames that were not at issue in the first case, and we believe that there's at least an issue of fact for purposes of traditional arrest judicata on the question of essentially the same for the product. It's like the Acumed case that I was referencing before. In Acumed, there was a surgical nail, and the claim said that it had to be configured to occupy a certain region in the humerus. It didn't have dimensions in the claim. It said configured to occupy a certain region. So here we have claim limitations where it said the auxiliary frame has arms, they have to extend across sides of the primary frame, and adapted so that the auxiliary frame can engage. Now, Revolution and Marchand took the position in the district court that that cannot be done with their products. You cannot stably top mount the accused auxiliary frames on a primary frame. That in and of itself shows that there's a factual issue as to identity, as to whether these are essentially the same. Thank you. Thank you, Mr. Nicodemus. Thank you, Your Honor. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.